# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

GERARD TANK & STEEL, INC.,

    Plaintiffs,

v.

AIRGAS USA, LLC,

    Defendant.

Case No. 17-2259-JAR

## MEMORANDUM AND ORDER

Plaintiff filed this declaratory action, alleging an agreement it executed with Defendant is: 1) void for lack of mutuality of obligation because the Price Changes provision gave Defendant the unilateral right to escape performance under the Agreement at any time (Count I); and 2) terminable at will because Plaintiff had no knowledge of the page containing the termination provision (Count II). This Court previously dismissed Count I, but allowed Count II to proceed, finding whether Plaintiff was ever presented with the page containing the termination provision and whether Plaintiff had sufficient notice of that page required further factual development.[1] Before the Court is Defendant's Motion for Summary Judgment (Doc. 37). The motion is fully briefed and the Court is prepared to rule. For the reasons stated below, the Court denies the motion.

---

[1] Doc. 14.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the moving party demonstrates "that there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law."[2] In applying this standard, courts view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[3] "There is no genuine [dispute] of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party."[4] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[5] A dispute of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[6]

The moving party initially must show the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law.[7] In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial need not negate the nonmovant's claim; rather, the movant need simply point out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.[8]

---

[2] Fed. R. Civ. P. 56(a).

[3] *City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[4] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986)).

[5] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[6] *Adler,* 144 F.3d at 670 (citing *Anderson,* 477 U.S. at 248).

[7] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002), *cert. denied* 537 U.S. 816 (2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[8] *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

Once the movant has met the initial burden of showing the absence of a genuine dispute of material fact, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[9] The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[10] Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[11] In setting forward these specific facts, the nonmovant must identify the facts "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[12] To successfully oppose summary judgment, the nonmovant must bring forward more than a mere scintilla of evidence in support of his position.[13] A nonmovant may not create a genuine issue of material fact with unsupported, conclusory allegations."[14]

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy, and inexpensive determination of every action."[15]

## II.  UNCONTROVERTED FACTS

The following material facts are either uncontroverted or, if controverted, are construed in the light most favorable to the nonmovant. As an initial matter, for convenience and clarity, the Court begins by identifying and denominating documents central to this case. Plaintiff

---

[9] *Anderson,* 477 U.S. at 256; *Celotex,* 477 U.S. at 324; *Spaulding,* 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).

[10] *Anderson,* 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.,* 256 F.3d 1013, 1017 (10th Cir. 2001).

[11] *Mitchell v. City of Moore, Okla.,* 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler,* 144 F.3d at 670–71); *see Kannady,* 590 F.3d at 1169.

[12] *Adler*, 144 F.3d at 671.

[13] *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1539 (10th Cir. 1993).

[14] *Tapia v. City of Albuquerque*, 170 F. App'x 529, 533 (10th Cir. 2006).

[15] *Celotex,* 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

claims the parties' agreement was a single-page agreement, while Defendant maintains the parties' agreement was a double-sided document, making it a two-page agreement. According to Defendant, one side was entitled "Product Sale Agreement" and contained enumerated paragraphs 1–10 ("Page One"), and the other side contained enumerated paragraphs 11–21 and the signature block ("Page Two"). Plaintiff maintains the parties' agreement was Page Two only.

Defendant supplies and sells industrial, medical, and specialty gases in both bulk and cylinders. Plaintiff manufactures large storage tanks and works in heavy steel fabrication. When the parties' executed their agreement, Larry Joe Gerard was Plaintiff's president, and Mike Tremblay was Defendant's sales representative assigned to Plaintiff's account.[16]

On September 9, 2003, Tremblay presented Gerard with two sheets of paper on a clipboard: on top was Page Two, and on bottom was the "Bulk Gases Rider."[17] Tremblay told Gerard that the agreement was for seven years and for bulk only.[18] Trembly knew that Gerard would not sign a contract involving cylinder gases. Tremblay did not tell Gerard that the agreement would renew for successive seven-year terms, a provision included on Page One.[19]

Gerard signed Page Two and dated it September 9, 2003, without turning it over.[20] Tremblay also signed Page Two on September 9, 2003, and forwarded it for acceptance by Mike

---

[16] It is unclear when Tremblay left Defendant's employ, but he is currently employed by Matheson. Doc. 38-1, Tremblay Dep., 6:22–24; 49:12. Tremblay contacted Gerard on Matheson's behalf periodically. Doc. 38-2; Gerard Dep, 93: 13–21.

[17] Doc. 39-2, Gerard Dep., 41:19-22 ("Q. You were presented on the clipboard with [Page Two] facing up. That's what you remember? A. Yes.")

[18] Doc. 39-5, Tremblay Dep., 16:1–5.

[19] Doc. 38-3, Page One, ¶ 2. *See also* Doc. 39-5, Tremblay Dep. at 15:24–16:14, 19:17–20:16, 43:6–44:11, 72:11-23.

[20] Doc. 39-2, Gerard Dep., 43:22–25 ("Q. Okay. And you never flipped -- if it's on a clipboard, you never flipped it up to see whether it was blank or not on the back? A. No.").

Duvall, who signed and dated it September 19, 2003. Defendant kept the agreement with the original signatures.[21]

From September 2003 through today, Plaintiff bought bulk gases exclusively from Defendant. From September 2003 through November 2016, Plaintiff purchased its requirement for cylinder gases exclusively from Defendant. For a short period of time from November to December 2016, Plaintiff purchased certain cylinder gases from Matheson Tri-Gas ("Matheson").

On or about December 8, 2016, Defendant wrote Matheson a letter, advising: 1) Plaintiff had an agreement with it to purchase all of its present and future requirements for gases, 2) the agreement had a seven year initial term and an automatic renewal provision for successive seven-year terms, 3) Plaintiff had not provided Airgas with a notice of termination, therefore their agreement remained in effect until at least September 18, 2024, and 4) it reserved all of its rights and remedies under the agreement.[22] The letter asked Matheson to take no further action inconsistent with said agreement. Defendant attached to the letter, a copy of Page One, Page Two, and the Bulk Gases Rider with the prices redacted.

Plaintiff received a copy of the Matheson letter, along with the attachments. This was the first time Plaintiff became aware of the existence of Page One and its terms.

## III. DISCUSSION

Count II alleges that the parties' agreement is terminable at will because Plaintiff never saw or had any knowledge of Page One, which contained the termination provision. Plaintiff contends that because the parties' agreement did not specify the term or duration of the

---

[21] It is unclear whether Defendant ever sent Plaintiff a copy of the signed agreement.
[22] Doc. 5, Ex. B.

agreement, it is terminable at will pursuant to K.S.A. 84-2-309. Plaintiff claims that it was never presented with Page One in the first place.

Defendant argues that the undisputed evidence establishes that Tremblay gave Gerard a double-sided product sale agreement on September 9, 2003. In other words, Tremblay gave Gerard both Pages One and Two. Defendant points to the following deposition testimony of Tremblay to establish this fact:

> Q: Did you take him the entire contract to sign it?
>
> A: Yes.
>
> Q: All right. So he had the whole contract in front of him when he signed it, right? Correct?
>
> A: Yes.[23]

Defendant says Gerard's deposition testimony reconciles with Tremblay's testimony when he acknowledged that he had no reason to dispute that Tremblay gave him a two-sided agreement:

> Q: I'm just trying to understand what your allegations are. And I understand your allegation is you never saw page 1, and we're moving forward with that assumption here today. But what I'm asking you is whether you have any reason to dispute -- and maybe this is the question I should have asked to begin with -- whether you have any reason to dispute that the page was two-sided when you signed it?
>
> A: I would guess I have no reason to dispute that fact that you're stating.[24]

Plaintiff argues a genuine dispute exists as to whether Gerard was ever given Page One on September 9, 2003. Plaintiff acknowledges that there is some deposition testimony from Tremblay indicating he gave Gerard a double-sided agreement, but Tremblay also contradicted himself:

---

[23] Doc. 38, Tremblay Dep., 46:19–25.

[24] Doc. 38, Gerard Dep., 43:11–21.

> Q: Okay. And you can't say with certainty . . . that you took both pages of [the product sale agreement] for Mr. Gerard to review and sign, can you? Can you say that with certainty?
>
> A: No, because I can't remember if it was a one-page document with the amendment, or if it was a two-page. I don't remember that.[25]

Tremblay also signed an affidavit stating that he did not give Page One to Gerard:

> 6. There is another page (page 1) of the standard Airgas MidSouth, Inc.'s standard Product Sale Agreement which contain Paragraphs 1-10 but those terms were never provided to Gerard Tank & Steel Inc. and were not a part of the Agreement between Gerard Tank & Steel Inc. and Airgas MidSouth, Inc.[26]

The Court agrees with Defendant that Tremblay discredited his affidavit during his deposition when he admitted that he signed it without reading it carefully. But even without Tremblay's affidavit, Plaintiff has pointed to testimony indicating that a genuine dispute exists as to whether Tremblay gave Gerard a double-sided agreement on September 9, 2003. Tremblay's deposition testimony necessarily raises a credibility question that is outside this Court's province on summary judgment.[27] The Court finds that a jury could be persuaded that Tremblay was confused by counsel's use of the terms "entire contract" and "whole contract" during his deposition. Additionally, the Court finds that a jury could be persuaded by Gerard's testimony that the lack of discussion with Tremblay regarding automatic renewal explains why Page One was not presented to him.

As to whether Plaintiff had notice that the agreement was incomplete, Defendant argues that it need not establish Gerard's actual or constructive notice of Page One because the evidence

---

[25] Doc. 39-5, Tremblay Dep., 70:23–71:5

[26] Doc. 39-3, Tremblay Aff. at 2, ¶ 6.

[27] *Guang Dong Light Headgear Factory Co. v. ACI Int'l, Inc.*, No. 03-4165-JAR, 2008 WL 53665, at *13 (D. Kan. Jan. 2, 2008) (finding contradictions in deposition testimony and email necessarily raise a credibility question that is outside the court's province on summary judgment).

confirms that he did receive Page One. This argument is flawed because it assumes Defendant conclusively established Gerard's receipt of Page One. That fact has not yet been established.

## IV. CONCLUSION

In sum, whether both pages of the document were presented to Gerard on September 9, 2003 is a material issue of fact precluding summary judgment.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 37) is **DENIED**.

**IT IS SO ORDERED.**

Dated: July 2, 2018

                                             S/ Julie A. Robinson
                                             JULIE A. ROBINSON
                                             UNITED STATES DISTRICT JUDGE